Avram E. Frisch, Esq.
(Attorney ID No. 025652006)
The Law Office of Avram E. Frisch LLC
1 University Plaza, Suite 119
Hackensack, NJ 07601
Telephone: (201) 289-5352
Email: frischa@avifrischlaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF NEW JERSEY**
-----------------------------------------------------------X

ACU PLASMOLD INC.,                                    Case No.:

            Plaintiff,

        -against-

VISION INDUSTRIES GROUP INC.,
A/K/A VISION SAFETY PRODUCTS LLC and,
A/K/A VISION HARDWARE, INC.,

        and                                    **COMPLAINT**
                                     (with JURY DEMAND)
LUKE LIANG.

           Defendants.

-----------------------------------------------------------X

**NATURE OF THE ACTION**

1.     This is a breach of contract and fraud action by a Canadian corporation against a

New Jersey Corporation and an individual residing in New Jersey.

**JURISDICTION AND VENUE**

2.     This Court has subject matter jurisdiction over all causes of actions set forth

herein based upon 28 U.S.C. § 1332(a)(2).

3.     This Court has personal jurisdiction over Defendants since Defendant Vision Industries Group, Inc. ("Vision") is headquartered in New Jersey and Defendant Luke Liang's principal residence is in New Jersey.  The actions complained of herein were taken by Defendants Vision and Liang within the State of New Jersey, giving it (him) the requisite minimum contacts with the state required to be subject to jurisdiction therein.

4.     Venue is proper in this judicial district since defendant Vision is a New Jersey Corporation with headquarters located in New Jersey, and Defendant Liang is a resident of New Jersey.

5.     The amount in controversy exceeds $75,000.

## THE PARTIES TO THE COMPLAINT

6.     Defendant Vision is a New Jersey Corporation with its principal place of business at 500 Metuchen Road, South Plainfield, New Jersey 07080.

7.     Defendant Luke Liang is (and was, at all time relevant to this complaint) the owner of Vision.

8.     Plaintiff Acu Plasmold, Inc. (""ACU," herein) is an Ontario Canada Corporation, with its principal place of business at 270 Esna Park Drive, Unit 9-10, Markham Ontario, L3R1H3 Canada.

9.     Vision manufactures window parts in its factory in China through its associate company Vision Enterprises, Ltd. in Nanhai, Foshan, Guangdong, China (the "Liang factory").

10.     Liang is the majority owner (along with member(s) of his family) of Vision Enterprises, Ltd.

11.     Vision gets window parts from the Liang factory.

12.     Vision retails its window parts in the United States

13.     Defendant Vision was and remains one the three largest manufacturer-distributor of window parts in the United States.

14.     Defendant Vision's United States window parts distribution business was, up until 2015, limited to non-casement windows.  Non-casement windows are window that go up and down.

15.     Liang owns approximately twenty other businesses including businesses dealing with real estate, internet based retail consumer goods, and car and truck tires.

16.     ACU is one of the larger distributors of <u>casement</u> window parts in Canada. Casement windows are windows that swing out.

17.     ACU and its factory in China (Jiangmen Qiandi Plastic Co. Ltd.) are the only businesses in which Alvin Zhuo has an ownership interest.

18.     Since approximately 2000 Vision was planning on, and working towards, entering the <u>casement</u> window parts market (windows that swing out, as opposed to up and down) in the United States.  As detailed herein, Vision was acquiring patents on <u>casement</u> parts long before 2015 when the events described herein took place.

## FACTS

19.     In early October 2015 Luke Liang initiated the first contact between Alvin Zhuo and himself by telephoning Alvin Zhuo.

20.     Alvin Zhuo knew of Luke Liang because Luke Liang was known as a major supplier of window parts in the United States and was known as a wealthy businessman in the Chinese community.

21.     Luke Liang told Alvin Zhuo that Vision: (1) was one of the top three biggest window parts distributors in the United States; (2) manufactured all of its parts in "our factory"

3

in China; (3) was limited to distributing non-casement parts; (4) had no interest in manufacturing

casement parts; (5) was interested in becoming a distributor of casement parts; and, (6) was

interested in becoming ACU's exclusive distributor in the United States.

22.     Luke Liang's statement that Vision had no interest in producing casement parts,

was false.   Long before 2015, Vision was taking active steps towards manufacturing a full line

of casement parts in the Liang factory.

23.     By 2006 Vision had developed and patented one of the three main parts of a

casement window.  In 2006 Vision applied for, and in 2008 was granted, a patent from the

United States Patent Office, for casement "adjustable hinges." [U.S. Patent Number US

7,900,400 B2].

24.     An "adjustable hinge" is one of three key parts of a casement window.

25.     In 2011 Vision was granted a patent from the United States Patent Office for a

new improved version of its "adjustable hinge." [U.S. Patent Number US 8,032,989 B2].  In

order to get a patent for an "improved version" of an already patented product, Vision had to

prove that it had come up with a "new, original and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof."

26.     Vision had the manufacturing capacity to produce casement products.  Vision

boasted on its website:

> Vision produces a comprehensive line of window and door operating hardware,
> and has more than 9,000 window and door hardware parts and accessories, sixty
> registered patents and many more pending applications. The company has over 25
> years of experience in product development, manufacturing, and quality control.
> It also has a team of in-house engineers that can design **or duplicate existing
> parts**, and provide custom designs and solutions to meet the needs of its
> customers.

[https://visionhardware.com/about-vision/, accessed March 11, 2021 (emphasis added)].

27.     After the early October 2015 phone call, Luke Liang sent Alvin Zhuo an email with his cell phone number, and, invited Alvin Zhuo to come to the United States to meet with him to further explore a potential exclusive dealership for Vision in the United States.

28.     Luke Liang and Alvin Zhuo come from the same province in China.  There are approximately 27 provinces in China, and many dialects and subdialects with those provinces. Coming from the same province and speaking the same subdialect of Cantonese, instantly put Zhuo at ease with Liang.

29.     On October 19, 2015 Alvin Zhuo traveled to New Jersey and met with Luke Liang.  At the meeting Luke Liang stated that he was not willing to be a regular customer without having an exclusive distribution agreement.

30.     On October 28th Luke Liang sent Alvin Zhuo a draft contract which he claimed to have "modified myself from a mostly boilerplate format."

> Alvin, attached please find a distribution agreement **where I modified myself from a mostly boilerplate format**.  Please let me know should you have any comments so that we can wrap this thing up.
>
> I look forward to hearing from you.
>
> Thanks!!
>
> Luke Liang

(Emphasis added).

31.     Under the proposed agreement Vision would become ACU's exclusive distributor in the United States for, "Primarily casement window hardware" (no specific non-casement hardware was mentioned in the contract; nor was any non-casement hardware ever ordered from ACU by Vision).

32.     Under the proposed agreement there would be two limitations/obligations placed upon ACU: (1) ACU was required to sell its products to Vision at a price "no greater than the best price supplier's (ACU) factory provides its largest customer;" and, (2) ACU was prohibited from selling its products in the United States, other than to an existing customer. (Exclusive Distribution Agreement – the "Agreement," page 5, Section 5.1; and, pages 1 and 2, Section 2.1).

33.     Under the Exclusive Distribution Agreement proposed by Luke Liang, there were no obligations at all upon Vision.  There was no minimum purchase requirement imposed upon Vision, meaning that under the literal terms of the Agreement, Vision could keep ACU out of the U.S. market without buying anything from ACU.

34.     Luke Liang's statement to Alvin Zhuo that he had written the contract himself from a form, was false.

35.     Liang's motive for falsely telling Alvin Zhuo that he had written the contract himself, was to place Zhuo at ease so that Zhuo would, like Liang represented he had done, go "Lawyer-less" into the deal.

36.     Alvin Zhuo, relied upon Liang's above misrepresentations (that Luke Liang had drafted the contract himself without any lawyer and that Vision had no interest in manufacturing casement window parts), and executed the contract as proposed by Liang without showing the proposed contract to anyone, let alone having it reviewed by an attorney, let alone making any edits.

37.     Alvin Zhuo sent an email back to Luke Liang accepting the proposed contract "as-is," and then sent Luke Liang a signed copy on November 3, 2015.  Alvin Zhuo made no edits or alterations to the original contract that Luke Liang first sent to Alvin Zhuo on October 28, 2015.

38.     After entering into the Agreement on November 3, 2015, two years went by with no substantial orders from Vision.

39.     For the first year and a half of the Agreement from November 3, 2015 to August 18, 2017, Vision's total orders amounted to $6,794.66, all of which were small orders or samples.

40.     On August 18, 2017 Zhuo sent Vision (copying Liang) an email setting forth guidelines for orders:

Hi Ms Huang,

We can only supply:

Please order by full box quantity.  If we have inventory in Jiangmen Plant, then supplied by Jiangmen Plant.  If we have [inventory] in Canada [site] then supplied by Canada.

If we don't have, please wait until we have orders [with same items] and arrange for supplying.  We are not going to do specifically custom-made samples.

We still have no interest to custom make your company's special design products. Please arrange accordingly on your end.

Thanks,
Best Regards,

Alvin Zhuo

41.     After that there were no orders at all for six months until January 3, 2018, when Vision placed a tiny order less than a "full box," for approximately $1,089.55 worth of awning operators and limit devices.

42.     The January 3, 2018 order was rejected for several independent reasons: (1) the order form had no price on it (which is require on all order forms) and therefore could not be processed; (2) failed to meet the "full box" requirement; (3) the items were out of stock; and, (4) the order was far too small ($1,089.55).

43.     The explanation for ACU's rejection of the above order, was communicated to Vision in two emails.

44.     On January 10, 2018 ACU emailed Vision:

Your order #13165CC will not be accepted because following;
1.  The ordering quantity is less than its MOQ (minimum order quantity);
2.  There is no production plan for these products in recent months.
Please kindly be noted.

45.     After receiving the emailed explanation for the rejection of the order, Vision employee Ms. Huang Dan asked ACU's Dai Lingiang for a handwritten signed and dated record of the reason for the rejection on the order.

46.     In response to the above request ACU's Dai Lingiang supplied Vision's Ms. Huang Dan with a handwritten dated signed explanation:

"The quantity of this purchase order [PO] our company cannot produce.  If we receive large orders for these three part we can supply you with these items, but we checked our orders and we do not have any other order for these three parts."

47.     On January 19, 2018 at 1:36 p.m. Vision submitted another small order for hinges totaling approximately $3,510.

48.     The Liang factory blind copied Vision's owner, Luke Liang, on the email conveying the above order.

49.     Vision put down an old 2017 price (lower than the then current 2018 price) on the above order.

50.     Within an hour and a half of receiving the order, ACU's Dai Lingiang responded to Vision's Ms. Huang Dan with an email rejecting the order and explaining the reasons for the rejection of the order:

"This order cannot be produced, please see attached."

45.     Because ACU's Dai Lingiang knew that Vision's Ms. Huang Dan was likely to request a copy of the order with a handwritten, signed and dated explanation of the reason for the rejection, Mr. Lingiang did just that:

> Special note: We don't have  inventory. This order is too small for mass production.
>
> Please be informed.
>
> <u>Dai</u> Lingiang
> Signature

51.     An hour after emailing the above, ACU's Dai Lingiang supplemented his original email to Vision's Ms. Huang Dan with an even more detailed explanation of why the order could not be processed:

> Hello, Miss Huang
> Regarding your company's order, our company cannot produce it; in the future, please do not send such loose orders, parts, and samples (order）to our company! In (20)15 our company made a co-operation agreement with your company, mainly to promote casement (casement) series hardware (complete series of hardware), in view of your company's orders in the past two years, our company [ACUs plant in China] has decided not to accept those loose orders and parts etc., mentioned above. **Regarding the issue of your company's orders in the later stage, it is necessary to re-discuss with our headquarters again.** From now on, as to the domestic business (I) no longer handle with your company's business. **If (you) have any questions, please inform your company's headquarters. Let your company's headquarters directly contact our company headquarters!**

(Emphasis added)

52.     After the above January 19th email from ACU's China factory to Vision, Vision's first contact with ACU came on February 7, 2018 in an email Luke Liang sent an email to Alvin Zhuo, captioned "**re: Pending Lawsuit**."

> 发件人: <u>l.liang@visionhardware.com</u> <<u>l.liang@visionhardware.com</u>>
> 发送时间: 2018 年 2 月 7 日 14:33
> 收件人: <u>acuhardware1@hotmail.com</u>
> 主题: Pending Lawsuit

Alvin,

It has come to our attention that your factory lately had refused to take an order of 1,500 hinges without any explanation; when we wanted to order 5,000 sets of casement hardware from you last month, we were immediately given a HUGE increase without prior notice or explanations, which made it impossible for us to sell to our customers.  By the contract, you were supposed to give us your best prices of all of your customers.

In the latest note from your factory in China, obviously under your instruction, we were notified that we can no longer contact them for any questions or orders without any explanations.

ACU's blatant infringements of the contract have caused Vision irreparable harm, not only in tens of thousands of dollars, but in our customer relations.  **As for now, this matter is in our lawyer's hands.  Unless you rectify these problems within the next ten business days, we will file a lawsuit of which we are very confident we will prevail.**

As an extra note, according to the Contract, we are entitled to damages once we identify the customers you are selling in the U.S.

You are welcome to directly contact me if you are still interested in resolving this issue.

53.     Luke Liang's statement that ACU had refused the order for 1,500 hinges, "without any explanation," was false.

54.     As detailed above, ACU had given an explanation for the rejection of the order (that the item was out of stock and was far too small – $1,089.55, not even a full box – and a new production would not be merited for such a small quantity).  That explanation was communicated to Vision in two emails (see above).

55.     Luke Liang was misleading and false in his assertion that, "when we wanted to order 5,000 sets of casement hardware from you last month, we were immediately given a HUGE increase without prior notice or explanations."  *Misleading*, because it directly implies that ACU has a contractual duty not to significantly increase its prices; ACU had no contractual limitation on

price other than the "best price" guarantee.  *Misleading*, because it directly implies that Vision had communicated to ACU its desire to purchase "5,000 sets of casement hardware," and was then was, "immediately given a HUGE increase."  That's not what happened.  ACU was never informed that Vision, "wanted to order 5,000 sets of casement hardware from [ACU] you last month."  *False*, because ACU did not make a "HUGE" increase in prices in 2018.  In 2018, the price for a complete set of casement hardware increased only 1.71% over the original price at the time the Agreement was executed in 2015.  Most of the 48 items either had no increase of price or decreased in price compared with the original price at the time the Agreement was entered into in 2015.  *False*, because ACU did give notice to Vision of the 2018 price increase.  ACU sent Vision the new price list on December 14, 2017.  Four hours after that, Vision's Ms. Huang Dan sent Alvin Zhuo and email objecting to the price increase (even though the Exclusive Distribution Agreement gave Vision no rights over ACU's prices, other than the "best price" guarantee, which Vision has never alleged was breached by ACU).  Alvin Zhuo sent a response the same day (December 14, 2017).  Luke Liang was copied with the entire email chain.

56.     On February 14, 2018, in response to Luke Liang's February 7, 2017 email set forth in Paragraph 49 above, Alvin Zhuo emailed Luke Liang:

> *Hi Luke,*
>
> *We didn't refuse your orders.  But what I asked are:*
>
> 1) *The price need(s) to be the price that we offered in year 2018. We have offered new price list long time ago but we have never got feed-back.*
>
> 2) *Our deal is of selling ACU's casement line of products, not just the isolated item like the hinges your side ordered.*
>
> *Thanks.*
> *Best regards,*
>
> *Alvin Zhuo*

57.     Liang responded to Alvin Zhuo's February 14, 2018 email (above) with four words, "See you in court," and filed a lawsuit in the New Jersey federal district court alleging, in large part, that "Defendant refused to sell the products to plaintiff." [Vision Industries Group, Inc. v. ACU Plasmold, Inc., Case No.: 2:18-cv-06296, Doc No. 1, Complaint, pg. 5, ¶ 19].

58.     The Complaint did not allege that ACU had violated either of its two limitations/obligations under the contract by either: (1) selling goods in the U.S. to anyone besides Vision, or, (2) breaching its "best price" guarantee.  Rather it alleged that ACU had violated the "duty of good faith and fair dealing that is part of any contract," by "refus[ing] to sell the products to plaintiff." [Vision Industries Group, Inc. v. ACU Plasmold, Inc., Case No.: 2:18-cv-06296, Doc No. 1. Complaint, pgs. 5-6, ¶¶ 23-32].

59.     During the years after entering the contract Vision sent engineers to ACU's China factory to observe and learn about ACU's production methods.  It was not necessary to know how the casement window parts were produced, in order to sell them.

60.     Today, Vision is advertising and marketing a full line of casement window parts.

## Casement Hardware
## On-Time, ALL the TIME.



**Contact Vision to visit our newest
130,000 sq/ft state-of-the-art facility.**

Vision Hardware offers a complete line of casement and awning hardware available for next-day pickup or shipping from any of our 5 warehouse locations. Our casement and awning systems are designed to be "Plug and Play" with your existing fabrication without the need for any modifications. Vision will evaluate your drawings, install our system into your sample unit and support the conversion at your location to ensure a smooth transition.

Best of all, Vision will inventory your components to your supply agreement, with guaranteed stock available.

**Vision Hardware casement parts have been tested and certified in accordance with AAMA 901-10 and AAMA 904-09, and are listed on the AAMA approved product list.**

Vision's wide selection, available in a range of colors and styles, easily accommodates any casement or awing design.






(800) 220-4756 ● www.visionhardware.com

61.     Today, of the 116 photographs of the casement window parts displayed on Vision's website, 48 of the photographs are the actual photographs of ACU parts which ACU sent to Vision in early 2016 (with a different background).  The photographs appear in a sub-sub-page under "window and door hardware," "casement" (They are marked "ACU Photo" in the list below):







16013W-R
16013W-SS-K-L
16013W-SS-K-R
16013W-SS-L
16013W-SS-R
16014-L
16014-R
1610
1611
1612
1613
1614
16210-L
16210-R
16310
ACU Photo
16313SS
ACU Photo
16313SS
ACU Photo
16440-07
16520-L
16520-R
1653-L
1653-R
16540
16541
1663
1663
1664
1665
ACU Photo
1670
ACU Photo
1671-72-L
ACU Photo
1671-72-R
1676-L
1676-R
ACU Photo
1677269A
1681-03
ACU Photo
1681-03C
1682
1683
1685
1687
1688A
1688B
1689
16913
1698
1699
20132
20132
31440
81302
81305-L/R
8193SS
Lin1811
ACU Photo
T1600SS
T16014
ACU Photo
T1603
ACU Photo
T1603SS
T1618
ACU Photo
T1619
ACU Photo
T16210
ACU Photo
T16213
ACU Photo
T16310SS
ACU Photo
T16420

T16431

T16520

T16531

T16531A

T16540

T16540-001

T16541

T1663

T1666

T1670

T1675

T1677149

T1677229

T1677269

T1677309

T1677349

T1677389

T1677429

T1677469

T1677509

T1677549

T1677589

T1680

T1685-86

T1688A

T1688B

T1688C

T1688D

T1688E

T1693

T1820

T8193

VISION HARDWARE Constantly Reliable

**Corporate Headquarters**

Vision Hardware, Inc.
480 Elizabeth Avenue
Somerset, NJ 08873
USA

**Contact Vision**

Customer Service

Sales And Marketing

Technical Support

Company Directory

2017 CRYSTAL ACHIEVEMENT AWARD WINNER

READERS' CHOICE DWM

Copyright © 2019-20 Vision Hardware. All Rights Reserved.

*These products may be protected by one or more Vision patents. Patent information can be obtained at http://www.visionhardware.com/patents*

×



62.    For each part displayed on the Vision website on a sub-sub-page under "window and door hardware," "casement," there is a link to a more detailed description of the part.

63.    ACU also goes under the name "Trust Hardware."  The "Trust" insignia is visible on some of the ACU parts displayed on a sub-sub-subpage of Vision's website:



**Model Number:**
T1666

**Material:**
Steel

**Description:**
Tie bar hook, left or right handed

64.    Another example of Vision's copying of ACU's parts, is the Casement Locking Handle it copied from ACU.  A Casement Locking Handle is the piece that locks the window shut.

Vision carries a number of Casement Locking Handles; all of them are identical to the corresponding ACU Casement Locking Handles in all material features.

65.     Vision applied for patents in China for Casement Locking Handle parts it copied from ACU. [Chinese Patent Application No. 202110910870, filed August 9, 2021, made public by the Chinese International Property Office (patent pending") No. CN 113738184, on December 3, 2021; and; Chinese Patent Application No. 20212182508.6, made public by the Chinese International Property Office No. CN 216341471 U, April 19, 2022].

66.     The specifications and drawings of Vision's Casement Locking Handle parts in its patent applications, are identical in all material features to ACU's Casement Locking Handles.

67.     Alvin Zhuo himself designed a unique spring system for the ACU locking handle in 2012, which was copied by Vision, as shown on the drawing from Vision's patent application:



[Chinese Patent Application No. 202110910870, filed August 9, 2021, pg. 8].

67.     The following Vision Casement Locking Handle spec sheet was downloaded from Vision's website (before spec sheets were made inaccessible for any party who was not registered on the Vision website).



67.     The above Vision Casement Locking Handle spec sheet was downloaded from Vision's website, is identical to the below ACU's Casement Locking Handle in all material features:



Vision carries a number of Casement Locking Handles; all of them are identical to the corresponding ACU Casement Locking Handles in all material features.

68.    Vision manufactured and continues to manufacture its casement line in the Liang factory in China.

69.    Vision, at the time it entered into the exclusive distribution agreement with ACU, was well along with its plan to get into the casement product business with its own manufactured parts produced in its factory in China.

70.    Mr. Zhuo first suspected that Vision was selling casement window parts in approximately May, 2022.  At that time, one of ACU's customers – Vinyl Window Design Limited – showed Mr. Zhuo sets of casement operators they had received from Vision, and asked

Mr. Zhuo whether they were ACU's operators.  After that, Mr. Zhuo went to Vision's website and found that Vision was advertising a complete line of casement window products.

**COUNT ONE**
**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**
Against Vision

71.     Every contract contains an implied covenant of good faith and fair dealing.

72.     The Exclusive Distribution Agreement was born in bad faith.  At the time Luke Liang entered into the Exclusive Distribution Agreement in 2015, he had no intention of utilizing ACU as a significant source of casement parts.

73.     Luke Liang made two misrepresentations and misused his cultural closeness with Alvin Zhuo to gain Alvin Zhuo's confidence so that Zhuo would enter into a contract which placed no obligations at all on Vision.

74.     Contrary to the representations Luke Liang made to Alvin Zhuo, at the time Vision entered into the exclusive distribution agreement with ACU, Vision: (1) was utilizing and developing its capacity to produce casement parts; and, (2) intended to eventually manufacture and distribute a full line of its own casement parts from its factory in China.

75.     It is an implied duty of the covenant of good faith and fair dealing of any exclusive distribution agreement, for the distributor not to manufacture and retail, the same products (let alone copy) for which it agreed to be an exclusive distributor, i.e. not to compete against the supplier in the exclusive distribution agreement.

76.     Vision, at the time it entered into the exclusive distribution agreement, intended to, and was in the process of, developing a full line of casement parts and to retail them in the U.S.

77.     Vision manufactured, in its China factory, the same casement products for which Vision agreed to be an exclusive distributor.  Vision retailed the casement products it manufactured in its China factory, in the U.S.

78.     Vision copied the ACU, in its China factory, casement products for which Vision agreed be an exclusive distributor.

79.     By manufacturing and retailing the same case products it had agreed to be an exclusive distributor for, Vision deprived ACU of the fruits of the Exclusive Distribution Agreement, while limiting ACU's ability to expand in the U.S.

80.     Through its above described actions, Defendant has caused great damage to Plaintiff, preventing him from expanding in the U.S. market, and robbing ACU's casement part product designs.

**COUNT TWO**
**FRAUD**
Against Luke Liang

81.     The entire relationship between Luke Liang (Vision) and Alvin Zhuo (ACU) was based upon two false representations: (1) that Vision had no interest in manufacturing casement part; and, (2) that he himself had drafted Exclusive Distribution Agreement from an online form.

82.     Both lies were intentional, and knowingly calculated to deceive and cheat Alvin Zhuo.

83.     Both lies were designed to put Alvin Zhuo at ease so that he would execute the contract without first having his lawyers review it.

84.     Alvin Zhuo reasonably relied upon Luke Liang's representations and as a result of that reliance, Mr. Zhuo did not have the proposed Exclusive Distribution Agreement reviewed by

a lawyer.  Instead, Mr. Zhuo on his own, signed the contract exactly as Luke Liang had sent it to him without a single edit.

85.     Alvin Zhuo trusted Luke Liang's representation that Vision had no interest in manufacturing its own casement parts.

86.     At the time Luke Liang proposed the Exclusive Distribution Agreement, he had no intention of becoming a significant seller of ACU casement window parts.

87.     Luke Liang's lies were part of a willful fraudulent scheme designed to further his business interests, including barring ACU from the American market and copying ACU's casement part designs.

88.     Through his above deceptive and false misrepresentations, Defendant Luke Liang has committed fraud against the Plaintiff.

89.     Defendant has caused great damage to Plaintiff, tying him up for years in expensive frivolous litigation, contractually barring him from expanding in the U.S. market, causing him to lose profits from the lost sales ACU would have had Vision had operated in good faith, and, robbing ACU's casement part product designs.

**RELIEF REQUESTED**

84.     Compensatory and equitable damages under both the first and second causes of action in an amount to be determined at trial in excess of $75,000.

86.     Punitive damages under both the first and second causes of action in an amount to be determined at trial in excess of $75,000.

87.     Equitable Damages: under both the first and second causes of action, 50% of Vision's past and future profits on the sale of casement window parts.

88.     Reasonable attorney fees and costs under both causes of action.


                                        Respectfully submitted,

Dated October 13, 2023                  /s/ Avram E. Frisch
                                        Avram E. Frisch, Esq.
                                        (Attorney ID No. 025652006)
                                        The Law Office of Avram E. Frisch LLC
                                        1 University Plaza, Suite 119
                                        Hackensack, NJ 07601
                                        Telephone: (201) 289-5352
                                        Email:
                                        frischa@avifrischlaw.com

## JURY DEMAND

Plaintiff hereby demands a jury for all issues so triable.

Dated: October 13, 2023

/s/ Avram E. Frisch_____
Avram E. Frisch, Esq.
(Attorney ID No. 025652006)
The Law Office of Avram E. Frisch LLC
1 University Plaza, Suite 119
Hackensack, NJ 07601
Telephone: (201) 289-5352
Email:
frischa@avifrischlaw.com

<u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

The undersigned hereby certifies, pursuant to Local Civil Rule 11.2, that with respect to the matter in controversy herein, neither plaintiff nor plaintiff's attorney is aware of any other action pending in any other court, or pending arbitration or administrative proceeding, to which this matter is subject.  This case is related to Vision Industries Group, Inc. v. ACU Plasmold, Inc. Case No.: 2:18-cv-06296-ES-CLW pending in this court.

                                                  Respectfully submitted,

Dated: October 13, 2023                           /s/ Avram E. Frisch_____
                                                  Avram E. Frisch, Esq.
                                                  (Attorney ID No. 025652006)
                                                  The Law Office of Avram E. Frisch LLC
                                                  1 University Plaza, Suite 119
                                                  Hackensack, NJ 07601
                                                  Telephone: (201) 289-5352
                                                  Email:
                                                  frischa@avifrischlaw.com